JS 44 (Rev. 06/17)

**CIVIL COVER SHEET**

17-CV-4119

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Frank Hightower on his behalf and all other similarly situated persons | Wells Fargo Bank, N.A.    17    4119 |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
McCain Law, P.C. 1515 Market Street, Suite 1200, Philadelphia, PA 19102

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*                        Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 465 Other Immigration Actions | | |
| | ☒ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. Section 2000e, et seq.
Brief description of cause:
Employment discrimination based on race

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of $150,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

SEP 14 2017

DATE  9/14/2017

SIGNATURE OF ATTORNEY OF RECORD  *[signature]*   S.T.

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**

17    4119

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 867 DeKalb Ave, Apt 3C, Brooklyn, NY 11221

Address of Defendant: 3400 Chichester Ave, Boothwyn PA 19061

Place of Accident, Incident or Transaction: Boothwyn, PA and Atlanta, GA
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐ No☑

Does this case involve multidistrict litigation possibilities?    Yes☑ No☐
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
    Yes☐ No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
    Yes☐ No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
    Yes☐ No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
    Yes☐ No☑

---

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases*:

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases*:

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

---

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*

I, Zakia E. Moore, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 9/14/2017    Zakia E. Moore
                    Attorney-at-Law

86434
Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 9/14/2017    Zakia E. Moore
                    Attorney-at-Law

86434 SEP 14 2017
Attorney I.D.#

CIV. 609 (5/2012)



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

Frank Hightower on behalf of
himself and all other similarly
situated persons        v.

CIVIL ACTION

**1 7      4 1 1 9**

Wells Fargo Bank, N.A. :

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)          ( レ )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          ( )

9/18/2019          Zakia E. Moore          Plaintiffs
**Date**          **Attorney-at-law**          **Attorney for**

215-230-1086          215-543-3343          zmoore@mccain-law.com

**Telephone**          **FAX Number**          **E-Mail Address**

(Civ. 660) 10/02

SEP 14 2017



**McCAIN LAW, P.C.**
Zakia E. Moore, Esquire (86424)
J. Edward McCain III, Esquire (85419)
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(215) 236-1086
zmoore@mccain-law.com
jmccain@mccain-law.com

Attorney for Plaintiffs

17    4119

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANK HIGHTOWER** | : Civil Action No. |
| 867 DeKalb Avenue, Apt 3C | : |
| Brooklyn, NY 11221 | : |
| | : |
| *On behalf of himself and all other* | : |
| *similarly situated persons* | : |
| *Plaintiffs,* | : **CLASS ACTION COMPLAINT** |
| **vs.** | : |
| | : **JURY TRIAL DEMANDED** |
| **WELLS FARGO BANK, N.A.** | : |
| 3400 Chichester Avenue | : |
| Boothwyn, PA 19061 | : |
| *Defendant.* | : |

## CLASS ACTION COMPLAINT

Plaintiff, individually and on behalf of all other similarly situated persons, by way of Complaint against Defendant, aver as follows:

### NATURE OF THE CASE

1.     This is an employment discrimination class action Complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a class of employees of defendant for violations of, *inter alia*, the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"); Title VII of the Civil Rights Act of 1964 and 1991; 42 U.S.C. § 2000e, et seq. (Title VII); the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. (PHRA) and Pennsylvania common law as well as other rights, obligations, privileges and benefits owed to the class by Defendant. Plaintiffs allege that defendant Wells Fargo has engaged in, and continues to engage in, a company-wide pattern and practice of employment discrimination, both intentional and systemic, on the basis of race and retaliation against him and a class of similarly situated Black/African Americans employees and former employees. Wells Fargo's discriminatory practices include, but are not limited to, discrimination in recruitment, hiring, promotion, transfer, job assignment, and compensation, on a classwide basis as alleged in this Complaint. Plaintiffs seek declaratory, injunctive, and equitable monetary relief from these practices; compensatory and punitive damages; equitable remedies of accounting, restitution and disgorgement; and an award of costs, expenses, and attorney's fees; all for himself individually and on behalf of the class he seeks to represent.

### JURISDICTION AND VENUE

2.     Jurisdiction. This Court has original jurisdiction of plaintiffs' Section 1981

claims pursuant to 28 U.S.C. §§1331 and 1343(a)(4). The Court has original jurisdiction of Plaintiff's Title VII claims pursuant to those two provisions as well as 42 U.S.C. §2000e-5(f)(3). The court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act of 2005 and 28 U.S.C. § 1367, supplemental jurisdiction over state law claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. (PHRA).

3.     Venue. Venue herein is proper in this District under 28 U.S.C. §§ 1391(b)(2) and 42 U.S.C. §2000-5(f)(3). Defendant maintains facilities and business operations in this District, employed Plaintiff in this District and committed some of the discriminatory acts alleged herein in this District.

## PARTIES

4.     Frank Hightower ("Plaintiff"), a New York resident, is a Black/African-American male former employee of Defendant. He was employed as a Store Manager in Chichester, PA and in Atlanta, GA from September 2012 through September 2, 2016.

5.     At the time Plaintiff was hired as a Store Manager in Chichester, there were no African-American managers in his district or area.

6.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") is an American international banking and financial services institution headquartered in San Francisco, CA.

7.     Wells Fargo is the third largest banking institution in the United States by total assets of $1,930 trillion. It has over 260,000 full-time employees and approximately 8,700 retail branches.

8.     Retail branches typically include a manager, bank tellers, customer service representatives and personal bankers.

9. Defendant operates a nationwide business plan that is established at its headquarters in San Francisco, CA and similarly implemented in each of its human resources and recruiting departments and retail branches in the United States, which plan includes hiring, recruiting, employee compensation and promotion.

10. Defendant has developed and continually reinforces a centralized corporate culture that is implemented at each of its retail banking branches and human resources and recruiting departments throughout the country. Defendant regularly moves upper level managers from one branch and region to another, and often from one state to another. This practice is done in part to ensure that a uniform Wells Fargo culture operates consistently throughout all of its retail banking branches. Within this structure also exists a company-wide discriminatory culture.

## FACTS RELATING TO THE PATTERN OF INTENTIONAL AND SYSTEMIC DISCRIMINATION BY DEFENDANT WELLS FARGO

11. Defendant's employment practices and systems discriminate against Black/African American employees because of their race in the retail banking division. The discriminatory practices engaged in by Wells Fargo's retail banking division are intentional and systemic in nature, and adversely affect plaintiffs and members of the class with respect to opportunities for hiring, promotion, transfer, job assignment, compensation, and other terms and conditions of employment, as specifically summarized below.

12. Defendant maintains a diversity scorecard which it uses to control hiring demographics via a quota system.

13. Within this quota system exists a fixed set of diversity hiring requirements based solely on numbers and percentages. However, compensation levels and retention of the hires based on this mandate fall far below those of their similarly-situated counterparts.

3

A.    Discriminatory retaliation

14.    Plaintiff started working with Defendant on or about September 2012 as a Personal Banker. By April 2014, as part of Defendant's plan to increase diversity among its store managers, Plaintiff was promoted to Store Manager. At the time Plaintiff was promoted to store manager there were no Black/African-American store managers.

15.    On or about July 1, 2014 Plaintiff informed Defendant's human resources department that Raymond Disandro (Caucasian), a District Manager, was treating another employee, Mark Bacon (Caucasian), more favorably than a similarly-situated Black/African-American employee, specifically in relation to monetary raises.

16.    Immediately following this report, Plaintiff began to experience a series of retaliatory events by Disandro, which ultimately resulted in his termination.

17.    The retaliatory actions were in the form of continued harassment, static salary, six (6) disciplinary write-ups, despite excellent performance, and other unsubstantiated attempts at discipline and corrective action. Disandro's behavior in this regard left an indelible impact on Plaintiff's employee file creating a discriminatory basis for his eventual termination.

18.    On or about September 2015, during a store manager's meeting, Bacon asked Plaintiff, Sara S. (last name unknown) (Indian-American) and Kevin Hawkins (Black/African-American) "Can I talk to the minorities?" Plaintiff complained to human resources regarding this comment.

19.    Upon information and belief, no investigation or corrective action by Defendant occurred because approximately one month later, Bacon made another similar racially-offensive joke to Plaintiff. After this second offense, Plaintiff complained again to human resources about Bacon's remarks and inquired why the initial comment was not investigated.

4

20.     Disandro would also instruct Plaintiff on which candidates to hire according to the diversity scorecard, but he did not provide the same compensation benefits to diverse hires as similarly-situated non-diverse employees.

21.     On or about November 2015, Plaintiff was on a telephone call with Tammarah Rhodes, an employee relations representative. During this call, Plaintiff complained of Disandro's continued discriminatory and retaliatory conduct. Upon learning of this conversation, Disandro attempted to confiscate Plaintiff's work keys and terminate him in front of the entire branch staff. Plaintiff contacted the Area Manager, Robin Choi, who advised that he was not terminated and apologized for Disandro's behavior.

22.     During the time Disandro was harassing Plaintiff and attempting to terminate him in the fall of 2015, Plaintiff applied for numerous transfer/promotions opportunities within the company in the Philadelphia and surrounding areas but was rejected each and every time.

23.     Upon information and belief, Disandro's baseless corrective actions and Plaintiff's discrimination complaints, caused Plaintiff's employment file to be "flagged" within his region preventing any transfer or promotional opportunities. This occurred despite the fact that in 2015 Plaintiff received numerous awards for performance. Additionally, despite his performance, he was still the lowest paid Store Manager in his region. In fact, the Regional President personally recognized Plaintiff's hard work and efforts as well as acknowledging his difficulties in securing a transfer and/or promotion.

24.     Suspecting that he was indeed being "flagged" within his region, Plaintiff applied for manager opportunities outside of the region. Immediately upon applying for a Store Manager position in Atlanta, Georgia, he was offered the position. Thus, on or about April 2016, Plaintiff was approved for lateral transfer to a Wells Fargo branch on Austell Road in

5

Atlanta, Georgia. Plaintiff suffered a pay cut to take the position in Atlanta.

25. On or about July 28, 2016 Plaintiff was served a corrective action/final warning regarding his "leadership style and communication style."

26. He received this discipline after receiving a Coaching Excellence award earlier the same year.

27. Plaintiff was advised that he was required to undergo trainings, work on his professionalism, refrain from placing any of his subordinate employees under corrective action and he was told he could not hire any additional employees. The trainings were to be completed by August 31, 2016 and the restrictions on managing his employees were in also in place until August 31, 2016.

28. Plaintiff filed a rebuttal disputing the allegations listed in the corrective action. In his rebuttal he specifically states that he believed that the District Manager, Gregory Ganow, was trying to find reasons to fire him. For example, after the corrective action was issued, Ganow instructed Plaintiff to interview an internal candidate for a customer service representative position. Afterwards, Ganow came to Plaintiff's branch and verbally chastised him for interviewing even though he was interviewing the candidate specifically at Ganow's request. This interview incident was also cited as a reason for his eventual termination.

29. After the interview incident, Plaintiff contacted Jenny Kent in the human resources department and advised her of this situation and other conflicting issues listed in his Final Warning, i.e. being responsible for trainings that were not available until 2017 although he was required to complete them by August 31, 2016.

30. On or about September 2, 2016, Ganow advised Plaintiff that he was being

6

terminated for failing to complete the corrective action listed on his Final Warning.

31. Upon information and belief, Area President in the Atlanta, Georgia, Jim Lawrence, knew Greg Reading, the Area President from the area where Plaintiff worked in Pennsylvania. It is believed and therefore alleged, that they discussed Plaintiff and his past discrimination complaints.

32. Plaintiff questioned Ganow as to why his first corrective action in Georgia was a Final Warning. Ganow told him that it was based on "the other stuff that happened in Philly."

33. This comment creates a direct causal connection between the discriminatory retaliation Plaintiff suffered from Disandro and Plaintiff's termination.

34. Upon information and belief, Plaintiff and other similarly-situated employees were retaliated against for engaging in protected activity by reporting and/or complaining of activity which they reasonably believed was illegal.

35. In fact, according a CNN Money.com article published on January 23, 2017, Wells Fargo admitted to finding evidence of retaliation against employees who filed reports using the company's ethics hotline. Needless to say, Plaintiff is not alone in his retaliation complaints.

B. Discriminatory compensation and promotion practices

36. During his time working for Defendant, Plaintiff noticed that Black/African-American employees were promoted less and paid less than their non-Black/African-American counterparts.

37. Plaintiff's starting salary as a Store Manager in Chichester was $48,000. At that time, all stores were paid based on the level of the store, i.e. Level 1, 2 or 3. Chichester was

7

a branch Level 2 because it was the largest in his district. There was a low, mid and high salary scale. After speaking with other managers, there were Level 1 store managers, all non- Black/African-American, whom were paid more than Plaintiff.

38.     Eventually, Plaintiff's base salary increased to $54,000, but even by then it should have been approximately $74,000, which would have been a mid-point.

39.     Aaron Arrington (Black/African-American) was a Personal Banker 1 and never received a raise over the course of three (3) years with Defendant although he had a high performance rating. When Aaron presented a job offer letter to management from a competitor bank, management declined to match the salary offered in the letter and Arrington left Defendant's employ. Arrington was Plaintiff's direct report.

40.     However, when Mike Sumerski (Caucasian) presented an offer letter from a competitor bank, he was offered an $8,000 salary increase to reject the job offer and remain employed with Defendant. Sumerski had been working with Defendant for less than one (1) year and was performing poorly. Sumerski was also Plaintiff's direct report.

41.     Rasheedah Hatchett, a Personal Banker 2 for approximately five (5) years at the time of Plaintiff's employment, was Plaintiff's direct report. Hatchett had certain professional licenses and constantly requested salary increases that were denied despite her licenses and high performance. Plaintiff knows of similarly-situated Caucasian Personal Banker 2's with less credentials but were paid at a higher rate. Upon information and belief, Hatchett remains employed with Defendant.

42.     Upon information and belief, Plaintiff, Arrington and Hatchett, as well as other-similarly situated employees, were discriminated in salary and promotional opportunities based on race.

8

43. Based upon the foregoing facts, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) dated November 17, 2016. On or about June 22, 2017 the EEOC issued a Notice of Right to Sue. The Charge and Notice are attached as Exhibit 1.

44. The class consists of Black/African-American retail banking employees. This action challenges both the promotion opportunity and salary advancement of these employees. This action also challenges the company's response to employees who engaged in protected activity and the adverse employment actions that follow thereafter.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings his claims under Section 1981, Title VII and the Pennsylvania Human Relations Act as a class action pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and Pennsylvania Rules of Civil Procedure 1701, et seq. on behalf of himself and all others similarly-situated, as more specifically described below.

46. Plaintiff seeks to represent a class, of which he is a member, consisting of: a. Black/African-American retail banking employees who were denied promotions, transfers and/or salary increases during the limitations period; b. all Wells Fargo retail banking employees who suffered adverse employment actions after engaging in protected activity during the limitations period, i.e. reporting activity to human resources or the ethics line they reasonably believed to be illegal.

47. The plaintiff as class representative as defined above, meets each of the requirements of Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure for certification of this case as a class action, and Pennsylvania Rules of Civil Procedure 1701, et seq. for the reasons stated below.

48.    Rule 23(a)(1) -- Numerosity. The exact number of members of the class is not known at present, and will be determined through discovery. It is estimated that there are hundreds or thousands of Black/African Americans who are class members. In addition, the class members are spread throughout the regions and states of the country, and are located in dozens of separate retail stores as employees. The class is therefore so numerous and so situated that individual joinder of class members is impracticable.

49.    Rule 23(a)(2) -- Commonality. There are numerous common questions of fact and law in this action that relate to and affect the claims of relief sought by the class, as well as the anticipated defenses thereto. These common questions include, without limitation, the following:

    a. Whether Black/African Americans were denied the same promotions, transfers and/or salary increases as similarly-situated non-Black/African American retail banking employees during the limitations period because of their race;

    b. Whether retail banking employees were subject to adverse employment actions, including but not limited to, denied promotions, transfers, salary increases and/or ultimately terminated after engaging in protected activity during the limitations period.

    c.    Whether Wells Fargo has given decision-making authority in the above-described personnel matters to district managers who exercise uncontrolled, unsupervised discretion that provides a ready means for discrimination, and whether that authority is used to discriminate in decision-making;

    d.    Whether there is a pattern or class-wide practice in Wells Fargo's above-described decision-making in personnel matters of intentional race discrimination against Black/African-American retail banking employees;

10

e. Whether statistical analyses of the compensation of Black/African Americans in retail banking positions show disparate treatment;

f. Whether the above-described policies and practices of Wells Fargo's retail banking division results in disparate treatment of Black/African Americans; and if so, whether they are job-related and consistent with business necessity;

g. What relief is appropriate to remedy the claims of the plaintiff and the class resulting from Wells Fargo's above-described discriminatory employment practices pursuant to Title VII and the PHRA;

f. The appropriate standards for grant of injunctive relief, both equitable and in the form of damages, to remedy Wells Fargo's above-described discriminatory employment practices;

g. Whether, as a result of Wells Fargo's above-described discriminatory practices, plaintiff and the class suffered lost wages and other monetary damages;

h. Whether Wells Fargo's above-described discriminatory actions are "intentional" within the meaning of authorities applying Section 1981 and 42 U.S.C. §1981a (a)(1); and

i. Whether Wells Fargo acted with malice or reckless indifference by the above-described discrimination against plaintiff and the class in the face of a perceived risk that its actions would violate their rights such that an award of punitive damages to the class is appropriate; and, if so, how such award should be determined and distributed to members of the class.

50. Rule 23(a)(3) -- Typicality. The claims of the named plaintiff, who is a representative of the class, are typical of the claims of the class. The named plaintiff has

11

been personally affected and discriminated against by the same practices that plaintiff alleges in this complaint have harmed the class as a whole and other class members individually.

51.    Rule 23(a)(4) -- Adequacy. The named plaintiff will fairly and adequately represent the interests of the class. There is no conflict between the named plaintiff and other members of the class with respect to this action or the claims for relief set forth in this complaint. The attorneys for the plaintiff are experienced and competent in representation of classes in employment discrimination actions, and they have and will devote adequate staff and other resources to the case.

52.    Rule 23(b)(2) -- Case Maintainable Under this Rule. This action is properly maintained as a class action pursuant to subsection (b)(2) of Rule 23 in that the defendant has acted or refused to act on grounds which are generally applicable to the class, in particular race, thereby making appropriate injunctive relief and corresponding declaratory relief with respect to the class.

53.    Rule 23(b)(3) -- Case Maintainable Under this Rule. This action is also properly maintained as a class action pursuant to subsection (b)(3) of Rule 23, particularly with respect to the claims of class members for damages. With respect to those claims, questions of law and fact common to the members of the class predominate over questions affecting only individual class members; and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual class and members have minimal interest in individually maintaining or controlling separate actions in this case; no other litigation has been commenced asserting the interests and claims advanced in this case; interests of fairness, efficiency, and consistency of outcome will be served by concentrating

12

the litigation of the class members' claims in this particular forum and action; this case will be manageable as a class action, and far more easily manageable than the multiplicity of individual actions in different jurisdictions that would result if this case is not permitted to proceed as a class action.

FIRST CAUSE OF ACTION -- VIOLATION OF 42 U.S.C. §1981 (ON BEHALF OF BLACK/AFRICAN AMERICAN PLAINTIFFS AND MEMBERS OF THE CLASS)

54.     Plaintiff repeats and re-alleges and incorporate by this reference the allegations set forth in paragraph 1 through 53, inclusive, as though fully set forth herein.

55.     Defendant's discrimination against Frank Hightower and the members of the class, is in violation of the rights of the plaintiff and the class afforded them by the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

56.     By the conduct described above, defendant Wells Fargo intentionally deprived the above-named Black/African American members of the class of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Wells Fargo, in violation of 42 U.S.C. §1981.

57.     As a result of defendant Wells Fargo's discrimination in violation of Section 1981, the African American plaintiff and members of the class have been denied employment opportunities providing substantial compensation and benefits, thereby entitling them to injunctive and equitable monetary relief; and have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Wells Fargo's actions, thereby entitling them to compensatory damages.

58.     In its discriminatory actions as alleged above, Wells Fargo has acted with malice or reckless indifference to the rights of the Black/African-American plaintiff and class

13

members, thereby entitling them to an award of punitive damages.

59. To remedy the violations of the rights of plaintiff and the class secured by Section 1981, plaintiff request that the Court award them the relief prayed for below.

## SECOND CAUSE OF ACTION -- VIOLATION OF TITLE VII (ON BEHALF OF PLAINTIFF AND MEMBERS OF THE CLASS)

60. Plaintiff re-alleges and incorporates by reference herein the allegations of paragraphs 1 through 59, inclusive, as set forth above.

61. Plaintiff and members of the class are employees and members of a protected class within the meaning of Title VII i.e. Black/African-American.

62. Defendant is an employer within the meaning of Title VII.

63. Defendant's discrimination against all of the plaintiff and members of the class is in violation of the rights secured to plaintiffs and the class by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991.

64. By the conduct described above, defendant intentionally violated the rights of plaintiff and members of the class under Title VII.

65. Plaintiff and members of the class were qualified within the meaning of the Title VII but suffered disparate treatment as a result of Defendant's conduct which are neither job-related nor consistent with business necessity, and therefore violates the rights of plaintiff and members of the class under Title VII.

66. In regards to retaliation, Plaintiff and members of the class have suffered adverse employment actions as a result of engaging in protected activity as defined within Title VII.

67. Plaintiff and members of the class have demonstrated a causal connection between the protected activity and the resulting adverse employment action.

68. As a result of Defendant's violation of Title VII, the plaintiff and members of the

14

class are entitled to equitable and injunctive relief, including "rightful place" and "make whole" remedies and equitable monetary relief, to remedy and compensate for the effects of defendant's unlawful actions.

69. As a result of the defendant's intentional violation of Title VII, the plaintiff and members of the class have suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life, thereby entitling them to compensatory damages.

70. In its discriminatory actions as alleged above, Wells Fargo has acted with malice or reckless indifference to the rights of the above-named African American plaintiff and class members, thereby entitling them to an award of punitive damages.

71. To remedy the violation of the rights of the plaintiff and the class secured by Title VII, the plaintiff on his behalf and on behalf of the class, request that the Court award them the relief prayed for below.

THIRD CAUSE OF ACTION -- VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (PHRA) (ON BEHALF OF PLAINTIFF AND MEMBERS OF THE CLASS)

72. Plaintiff re-alleges and incorporates by reference herein the allegations of paragraphs 1 through 71, inclusive, as set forth above.

73. Plaintiff and members of the class are employees and members of a protected class within the meaning of PHRA, i.e. Black/African-American.

74. Defendant is an employer within the meaning of the PHRA.

75. Defendant's discrimination against the plaintiff and members of the class is in violation of the rights secured to plaintiff and the class by the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

76. By the conduct described above, defendant intentionally violated the rights of

15

plaintiff and members of the class under the PHRA.

77.     By the conduct described above, defendant intentionally violated the rights of
plaintiff and members of the class that are residents of Pennsylvania under the PHRA.

78.     Plaintiff and members of the class were qualified within the meaning of the
aforementioned statute but suffered disparate treatment as a result of Defendant's conduct
which are neither job-related nor consistent with business necessity, and therefore violates
the rights of plaintiff and members of the class under the aforementioned statute.

79.     In regards to retaliation, Plaintiff and members of the class have suffered adverse
employment actions as a result of engaging in protected activity as defined within the
aforementioned statute.

80.     Plaintiff and members of the class have demonstrated a causal connection between
the protected activity and the resulting adverse employment action.

81.     As a result of Defendant's violation of the PHRA, the plaintiff and members of the
class are entitled to equitable and injunctive relief, including "rightful place" and "make
whole" remedies and equitable monetary relief, to remedy and compensate for the effects of
defendant's unlawful actions.

82.     As a result of the defendant's intentional violation of the PHRA, the plaintiff and
members of the class have suffered anguish, humiliation, distress, inconvenience and loss of
enjoyment of life, thereby entitling them to compensatory damages.

83.     In its discriminatory actions as alleged above, Wells Fargo has acted with malice or
reckless indifference to the rights of the above-named plaintiff and class members, thereby
entitling them to an award of punitive damages.

84.     To remedy the violation of the rights of the plaintiff and the class secured by the

16

PHRA, plaintiff on his behalf and on behalf of the class, request that the Court award them the relief prayed for below.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court grant relief on their First, Second and Third Causes of Action as specified below.

85.     Plaintiff prays that the Court assign the case for hearing(s) at the earliest practicable date(s) and cause the case to be in every way expedited, pursuant to 42 U.S.C. §2000e-5(f)(5).

86.     Plaintiff prays that the Court certify a class defined as:

a. Black/African-American retail banking employees who have been subjected to Wells Fargo's discriminatory practices with regard to promotion opportunities. As used in this paragraph, "promotion" includes transfer to another position that would provide additional wages, benefits, better working conditions, or an opportunity for career development, additional training, or experience that might reasonably lead to future advancement;

b. All Wells Fargo retail banking employees who suffered adverse employment actions, as defined by Title VII and the PHRA, after engaging in protected activity during the limitations period, i.e. reporting activity to human resources or the ethics line they reasonably believed to be illegal.

c. Black/African-American retail banking employees who during the limitations period have been subjected to Wells Fargo's discriminatory compensation practices.

73.     Plaintiff further prays that the Court certify the named plaintiff and their attorneys as

17

representatives of this class, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

74.    Plaintiff prays that the Court issue a declaratory judgment against defendant Wells Fargo finding that Wells Fargo's retail banking division has violated the rights of plaintiff and the class under Section 1981, Title VII, and the PHRA, by denying and depriving plaintiff and the class of equal employment opportunities on the basis of race and retaliation as alleged in this complaint are violations of Section 1981, Title VII and the PHRA.

75.    Plaintiff prays that the Court issue a preliminary and permanent injunction pursuant to §1981, Title VII and the PHRA, enjoining defendant Wells Fargo, its officers, agents, employees, and all others acting for or succeeding Wells Fargo, from engaging in the discriminatory employment practices alleged in this complaint that discriminate against plaintiff and the class in violation of Section 1981, Title VII, or the PHRA, on the basis of race and retaliation.

76.    Plaintiff prays that the Court issue a declaratory judgment against defendant Wells Fargo finding that Wells Fargo's retail banking division has violated the rights of plaintiff and the class under Section 1981, Title VII, and the PHRA, by denying and depriving plaintiff, the class of equal employment opportunities on the basis of race and retaliation, as alleged in this complaint; and that the violations of Section 1981, Title VII, and the PHRA.

77.    Plaintiff prays that the Court issue a preliminary and permanent injunction pursuant to §1981, Title VII and the PHRA enjoining defendant Wells Fargo, its officers, agents, employees, and all others acting for or succeeding Wells Fargo, from engaging in the discriminatory employment practices alleged in this complaint that discriminate against plaintiff or the class, in violation of Section 1981, Title VII, or the PHRA on the basis of

18

race or retaliation.

78.     Plaintiff prays that the Court enter a preliminary and permanent injunction ordering and requiring that defendant Wells Fargo formulate, institute, adopt and maintain policies and practices which will provide equal employment opportunities to plaintiff and which will to the extent practicable, remedy the continuing effects of past discrimination against plaintiff and the class and restore them to the employment status and position they would have held and enjoyed but for the unlawful discrimination complained of herein.

79. Plaintiffs pray that the Court award monetary relief as follows:

        a. On the First Cause of Action, order defendant to pay equitable monetary relief, compensatory and punitive damages to plaintiff and members of the class on whose behalf claims are asserted under Section 1981 in that Cause of Action, in an amount to be proved at trial;

        b. On the Second and Third Causes of Action, order defendant to pay equitable monetary relief, compensatory and punitive damages within the limits of 42 U.S.C. §1981a(a)(1) and the PHRA to plaintiff and members of the class on the claims asserted under both statutes in that Cause of Action, in an amount to be proved at trial;

79.     Plaintiff prays that the Court award him his costs, expenses and attorney's fees, payable by defendant Wells Fargo, as follows:

        a. By determining that plaintiffs are prevailing parties on the First, Second and Third Causes of Action, and thereupon awarding plaintiff his reasonable costs, expenses, and attorney's fees incurred in bringing this action, pursuant to 42 U.S.C. §1988 on the First and Second Causes of Action, §1988 and 42 U.S.C. §2000e-5(k) and 43 P.S. §962(c.2) on the Third Cause of Action.

19

81.    Plaintiff prays that the Court order Wells Fargo to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

82.    Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period of time to assure that defendant Wells Fargo has fully complied with the preliminary and permanent injunctions requested herein and has remedied to the greatest extent practicable the discriminatory policies and practices complained of herein, and that Wells Fargo is operating in full compliance with the requirements of §1981, Title VII, and the PHRA with regard to its employment policies and practices.

83.    Plaintiff prays that the Court award such other and further relief as this Court deems equitable and just.

## **JURY DEMAND**

Plaintiff hereby demand a trial by jury as to all issues so triable.

Respectfully submitted,

McCAIN LAW, P.C.

Zakia E. Moore, Esquire
J. Edward McCain, III Esquire
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-236-1086

Dated: 9 / 14 / 2017

20

# EXHIBIT

# A

11/17/2016 11:50 FAX  2154402606          EEOC-Philadelphia Office                    ☑0001/0006

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 530-2017-00390 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Frank Hightower** | | **1988** |

| Street Address | City, State and ZIP Code |
|---|---|
| **6700 Harbison Ave., Philadelphia, PA 19149** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **WELLS FARGO** | **500 or More** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **3400 Chichester Ave,  Boothwyn, PA 19061** | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN

☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION

☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 07-01-2013 | 09-02-2016 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or about September 2, 2012 as a "Personal Banker."  On or about September 2, 2016 I was terminated with the job title of "Store Manager."

On or about July 1 2013 I informed Human Resources that Raymond Disandro (white), District Manager, was treating a white employee more favorably (in the form of a monetary raise) than similarly situated Black/African-American employees who were more qualified and performing better. This began a series of retaliatory acts by Respondent, specifically Mr. Disandro, in form of continued harassment, static salary, despite excellent performance, approximately six (6) write-ups, and other unsubstantiated attempts at discipline and corrective action. On or about sometime in September of 2015, during a store manager's meeting, Mark Bacon, (white) made the comment, "I'd like to stand with the minorities." No investigation or attempt at corrective action was taken by Mr. Disandro, and roughly a month later Mr. Bacon made another comment inappropriate comment, at which time I contacted Human Resources to ask why the initial comment was not looked into. On or about sometime in November 2015, during a break, I was on a phone call with Tammarah Rhoda, Human Resources, attempting to complain about Mr. Disandro's discriminatory and retaliatory actions. When I returned to Respondent after the phone call Mr. Disandro attempted to take my keys and terminate me, I called Rhoda and informed her of what was happening. Mr. Disandro still took my keys and informed me that I was terminated. I was reinstated after a meeting with Area President, Robin Choi. On or about sometime in March of 2016 I was approved for a promotion and transferred

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Nov 17, 2016 | |
| Date          Charging Party Signature | |

11/17/2016 11:51 FAX  2154402606          EEOC-Philadelphia Office                    ☑0002/0006

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA | |
| | ☒ EEOC | 530-2017-00390 |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|
| State or local Agency, if any | |

Respondent's Atlanta location. On or about the end of April I began working in Respondent's Atlanta location. On or about sometime in August I was served with a corrective action/final warning for workplace professionalism, after I attempting to place a banker under corrective action. I was informed that I needed to take some trainings, work on my professionalism, and not to place any employees under corrective action or hire. I was then informed afterward by District Manager, Gregory Gainow, to interview internally for a "Personal Banker." I informed Jenny Kent, Human Resources, about this, and other conflicting issues listed on my Final Warning, such as being responsible for trainings I would be unable to register for until 2017, even though the trainings were listed to be completed in thirty (30) days. On or about September 2, 2016 Gainow informed me that I was terminated for failing to complete the corrective actions listed on my final warning.

I allege I have been discriminated against on the basis of my race (Black/African-American) I also allege that other Blacks/African-Americans were treated unfavorably and denied promotional and salary advancement. I also allege I have been retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY -- When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Nov 17, 2016 | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date        Charging Party Signature | |

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Frank Hightower**<br>**6700 Harbison Ave.**<br>**Unit B3**<br>**Philadelphia, PA 19149** | From: **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1300**<br>**Philadelphia, PA 19107** |

☐    *On behalf of person(s) aggrieved whose identity is*
     *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Legal Unit,** | |
| **530-2017-00390** | **Legal Technician** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒    More than 180 days have passed since the filing of this charge.

☐    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Spencer H. Lewis, Jr.,**
**District Director**

Enclosures(s)

$\varnothing/22/17$
*(Date Mailed)*

cc:
    **WELLS FARGO**
    **Brittni G. Robinson (For Respondent)**
    **Zakia E. Moore, Esq. (For Charging Party)**

## VERIFICATION

I, Frank Hightower, plaintiff in this action, verify that the statements made in this class action complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 PA. C.S.A. § 4904 relating to unsworn falsification to authorities.

Frank Hightower

Date: 9/1/17

20